### 21126

Irvin D. PARKER, Consumer Advocate of South Carolina, Respondent, v. SOUTH CAROLINA DAIRY COMMISSION; Charles A. Shaw, Director; Hampton S. Caughman, Chairman; H. S. Peeler; James C. Martin; Margaret P. Strom; James M. Dorn; Jo Ann B. Price; Raymond W. Sifly; Gaston Gee; G. Bryan Patrick, Jr., *Ex Officio,* Individually and in their official capacities as Dairy Commissioners, Appellants.

(262 S. E. (2d) 38)

210

*Thomas E. McCutchen,* and *Asst. Atty. Gen. James W. Johnson, Jr.,* Columbia *for appellants.*

*Irvin D. Parker, Steven W. Hamm, Raymon E. Lark, Jr., Ronald W. McKinney,* and *Charlotte Nancie Quick,* Columbia, *for respondent.*

January 16, 1980.

*Per Curiam:*

The defendant, South Carolina Dairy Commission, has appealed an order of the circuit court temporarily enjoining the enforcement of the Commission's Wholesale Pricing Order No. 79-2 until the validity of the order can be adjudicated when the matter is tried on its merits. We affirm the order of the lower court.

The South Carolina Dairy Commission was created by § 39-33-10, *et seq., Code of Laws of South Carolina* (1976). It is granted broad powers to supervise and regulate the production, purchase, consignment, advertising, marketing, and sale of all Grade A milk and other milk products. Section 39-33-410 grants to the Commission the authority ". . . to define and designate any market or markets in the State as a controlled market, to fix the minimum prices to be paid by distributors to producers for the various classes of milk in

such market and to fix the minimum unit prices to be charged to or received from a wholesale consumer in such market by a distributor . . . provided, however, the Commission shall not exercise such authority until a public hearing has been held at which all interested parties are afforded an opportunity to be heard, . . . ."

Pursuant to this authority, the Commission issued its Wholesale Pricing Order No. 78-3 in the early part of 1978, establishing the wholesale price of milk at $1.86 per gallon.

After a hearing held by the Commission on February 5, 1979, it issued a producer pricing order and Wholesale Pricing Order No. 79-2, mandating an increase in the established minimum prices for fluid milk. Only the wholesale pricing order is at issue in this litigation. It raised the wholesale price from $1.86 to $1.98 per gallon.

In 1978, the General Assembly created, by § 37-6-601, et seq., the Department of Consumer Affairs and the office of Consumer Advocate. Section 37-6-607, which deals with the authority of the Consumer Advocate to maintain actions for judicial review, states:

"Advocate may maintain actions for judicial review.

The advocate shall be deemed to have an interest sufficient to maintain actions for judicial review and may as of right, and in the manner prescribed by Law intervene or otherwise participate in any civil proceeding which involves the review or enforcement of an agency action that the consumer advocate determines may substantially affect the interests of consumers."

In a general way, the Consumer Advocate is charged with the duty of representing consumer interests before state regulatory agencies. The plaintiff, Irvin D. Parker, is the Consumer Advocate and was a party to the hearing held by the Commission on February 5, 1979.

The order issued by the Commission was dated February 6. The statutes creating the South Carolina Dairy Commis-

sion provide for a court review; any appeal must be served within 10 days from the service of the order upon the party appealing. In 1977, the General Assembly enacted the Administrative Procedures Act, § 1-23-310, *et seq*. Its purpose is to formalize, and make uniform, appeals from administrative agencies. Section 1-23-380 allows an aggrieved party 30 days in which to appeal. The Consumer Advocate submits in his brief that the contested order was never served upon him. Under the view we take, it does not matter whether the appeal was noticed before or after the running of the ten day period. It was served within the thirty day period.

On March 7, 1979, a rule to show cause and order, summons and complaint, were served on the Commission by the Consumer Advocate, asking for a review of the Commission's wholesale pricing order of February 6, 1979. It was in the form of a declaratory judgment action, and according to the agreed statement of facts was, ". . . pursuant to § 1-23-380 of the Administrative Procedures Act and for declaratory relief and temporary and permanent injunctions against the enforcement of said order." The rule to show cause came to be heard before the circuit judge on March 19, 1979, resulting in the judge's order enjoining the Commission from enforcing its ". . . Order 79-2, or any other type of wholesale pricing order, until the Court resolves the constitutional and statutory questions relating to the setting of the wholesale price of grade A fluid milk."

The Commission challenges the right of the Consumer Advocate to bring a declaratory judgment action, and submits that the review sought should have been pursued within ten days as required by § 39-33-300 of the Code. While we are of the opinion that the statute gives to the Consumer Advocate the right to maintain declaratory judgment actions, we are of the view that it was the legislative intent as shown by both the statutes creating the Commission and the Administrative Procedures Act, that reviews of the kind before the court be pursued by way of appeal as set forth in § 1-23-380. At the hearing before the Commis-

sion, counsel for the Commission recognized the applicability of the Administrative Procedures Act, when he said:

"Mr. McCutchen: During the executive session I have called to the attention of the Commission a matter about which this Commission has not previously known. Section 1-23-350 which states in part that: 'A final decision or order adverse to a party in a contested case shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law separately stated. Findings of fact as set forth in statutory language shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.' This is a part of the Administrative Procedures Act and has given the members of the Commission some concern and has given us as attorneys some concern to be sure that whatever action is taken includes the provisions that are called for here. So this has been discussed and I want that put in the record. The discussion here now will be off the record."

We agree that the appeal comes under the Administrative Procedures Act such that application to the circuit court for relief from the order, being within 30 days, was timely. While stating the issues on appeal in the form of declaratory judgment action was perhaps superfluous, we think that it adequately and properly notified the Commission of the grounds of the Consumer Advocate's grievances. Accordingly, on remand, the procedure will be in keeping with the Administrative Procedures Act. If it should develop that the Consumer Advocate is entitled to pursue any relief available in a declaratory judgment action but not available upon the appeal under the Administrative Procedures Act, the trial court may resolve such issues after giving both parties ample opportunity to plead and meet the additional questions raised.

The temporary relief granted in the form of an injunction is consistent with the authority conferred by the legislature upon the circuit court, when it said, in § 1-23-380:

"The filing of the petition [for review] does not itself stay enforcement of the agency decision. The agency may grant, *or the reviewing court may order,* a stay upon appropriate terms." (Emphasis added.)

The Commission argues that even if the matter was ■ properly before the court, the trial judge erred in granting a temporary injunction. Whether the temporary injunction was granted pursuant to § 1-23-380 of the Code, or as a result of the court's general authority in a declaratory judgment action, is of little consequence. In either instance, the judge is allowed a broad discretion. We find no abuse.

In his order, the trial judge ruled that the Commission was ". . . enjoined, *pendente lite* from implementing and enforcing Dairy Commission Wholesale Pricing Order 79-2, or any other type of wholesale pricing order, until the Court resolves the constitutional and statutory questions relating to the setting of the wholesale price of grade A fluid milk. This order will take effect upon the Consumer Advocate's filing a written undertaking with the Court pursuant to Section 15-55-60 of the Code of Laws of South Carolina, 1976, in the amount of $2,500.00."

The Commission argues that the effect of the Court's ■ order is to enjoin the enforcement not only of Order No. 79-2, but also the order of the previous year, No. 78-3, which established the wholesale price of milk at $1.86 per gallon. We do not so construe the order. An order must be considered as a whole and interpreted in the light of the issues which were before the court at the time. It would appear that the Consumer Advocate was basically seeking to preserve the *status quo* or to avoid the consequences of Order No. 79-2. The judge's order said: "This court hereby concludes as a matter of law that the issuance of an order enjoining *pendente lite* the enforcement of Wholesale Pricing Order 79-2 is proper to preserve the *status quo ante* and to protect the consuming public of South Carolina against irre-

parable harm." The validity of both Order No. 78-3 and 79-2 will, of course, be appropriate for a determination when the matter is disposed of on its merits.

From a review of the whole record, we are of the opinion that the Consumer Advocate made a *prima facie* showing sufficient to warrant the granting of the injunction. Findings as required by § 39-33-1030(a) simply are not included in the Commission's order. The contention of the Commission that the judge erred in holding that the setting of minimum wholesale prices appears to set minimum retail prices, is not an issue which must be dealt with in this appeal. The comment of the judge is not determinative.

Lastly, the Commission submits that the undertaking ordered by the court, bond in the amount of $2,500.00, was improper in both form and amount. We disagree. Under the ruling of the lower court and our ruling today, the distributor, if it chooses, may charge for its product the price which the Commission established by its Order No. 79-2. Accordingly, if any aggrieved party is suffering a financial loss, it is a result of its own election.

The Commission, of course, can suffer no loss. The price paid by the distributor to the producer is not affected by the order of the court; accordingly, § 39-33-1050 is not applicable.

The order of the lower court is affirmed.