## 22966

Jimmy L. OTT and Calvin Grooms, Respondents v. D. Leslie TINDAL, Commissioner of Agriculture for the State of South Carolina, Appellant.

(377 S. E. (2d) 303)

Supreme Court

*Attorney General T. Travis Medlock, Deputy Attorney General John P. Wilson* and *Assistant Attorney General James W. Rion,* Columbia, *for appellant.*

*Palmer Freeman, Jr., Sinkler & Boyd, P.A.,* Columbia, *James M. Conner,* Kingstree, *for respondent.*

Heard Oct. 31, 1988.

Decided Feb. 21, 1989.

FINNEY, Justice:

Appellant, D. Leslie Tindal, Commissioner of the South Carolina Department of Agriculture (Department), appeals from an order of the circuit court which reversed the Commissioner's reduction of compensation for losses claimed by respondents, Jimmy Ott and Calvin Grooms, under the South Carolina Dealers and Handlers Guaranty Fund Act, S. C. Code Ann. § 46-41-200 to -250 (1976). We affirm the circuit court's order.

In January and February 1986 respondents sold and delivered grain to Agripen Grain Company, Inc. Under their contracts with Agripen, Ott was to be paid $2.95 per bushel and Grooms was to be paid $2.85 per bushel. Due to financial difficulties, Agripen failed to pay the respondents.

Respondents sought compensation from the South Carolina Dealers and Handlers Guaranty Fund, which is a state insurance fund designed to compensate grain producers who suffer losses as a result of transactions with grain dealers. It is funded by assessments paid by grain producers. These assessments are remitted to the State Treasurer and credited to the Fund. When a loss occurs, the Department investigates the alleged losses and requests payment from the fund for verified losses on behalf of grain producers.

In March 1986 Ott informed the Department of his inability to secure payment from Agripen. Thereafter, the Department created claim forms required by the Guaranty Fund Act. On April 1, 1986, the Department mailed forms to

producers known to have suffered losses as a result of grain deliveries to Agripen. By April 10, 1986, Ott and Grooms had returned their completed forms to the Department, along with their contracts and sales tickets.

By letter dated June 19, 1986, the Department approved payment for a partial amount of the losses claimed by respondents. The Department determined the date of loss to be May 1, 1986 (the date the Department verified the losses) and valued the grain at $2.57 per bushel, an amount lower than Agripen contracted to pay the respondents. Under the Department's calculations, the amount of Ott's recovery was $25,749.34 less than the contract price; the amount approved for Grooms was $3,554.55 less than the contract price.

Respondents instituted suit in July 1986 and in August 1986 they filed amended petitions seeking, *inter alia,* judicial review of the Department's decision under S. C. Code Ann. § 1-23-380 (1976) and declaratory relief under S. C. Code Ann. § 15-53-30 (1976). On December 29, 1986, the trial court ordered a Declaratory Judgment hearing. During this hearing, the Department was found to have improperly construed the Guaranty Fund Act and was directed to pay respondents the full amount of their verified claims.

On appeal the appellant questions the propriety of the circuit court's grant of declaratory relief and its construction of the Guaranty Fund Act. Appellant argues that the most appropriate remedy would have been by writ of certiorari or by review under the South Carolina Administrative Procedures Act.

We first address the trial court's grant of declaratory relief. The Declaratory Judgment Act is "remedial" and designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." S. C. Code Ann. § 15-53-130 (1976). Further, under Rule 57 of the South Carolina Rules of Civil Procedure, "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." *Cf. Williams Furniture Corp. v. Southern Coatings & Chemical Co.,* 216 S. C. 1, 56 S. E. (2d) 576 (1949). Thus, given appropriate circumstances, an individual aggrieved by an agency decision may maintain a declaratory judgment action. *See Parker v. S. C. Dairy Commission,* 274 S. C. 209, 262 S. E. (2d) 38 (1980). Such actions

are especially appropriate where, as here, the meaning of a statute is in question. In addition, declaratory judgment actions are appropriate where enabling legislation contains no special review provisions. The Guaranty Fund Act does not set forth specific provisions which would enable respondents to obtain review of the agency decision.

Furthermore, whether a declaratory judgment shall be granted is a matter which rests in the sound discretion of the trial court. *Williams Furniture, supra.* Absent a clear showing of an abuse of discretion, the lower court's decision to grant declaratory relief will not be disturbed. 26 C. J. S. *Declaratory Judgments* § 164 (1956). We find no abuse of discretion by the trial court.

We next address the trial court's interpretation of the Guaranty Fund Act. The Act states:

> When a loss is incurred by a grain producer for grain which has been delivered to a grain dealer licensed under this chapter, the producer shall within sixty days present his claim, which shall be under oath, to the Department on a *form supplied by it.* To verify his claim, the producer shall present a *contract* and any additional evidence of loss the Department may deem necessary. *The price per bushel of grain shall be established on the day of the loss* and *shall be for the full market value on that day at the location of loss* (emphasis added).

S. C. Code Ann. § 46-41-230 (1976).

The Commissioner argues that the respondents failed to present their claims within sixty days as required by the Guaranty Fund Act. We agree with the trial court that respondents cannot be held accountable for any delay in submitting their claims to the Department. Section 46-41-230 mandates filing of claims within sixty days on forms supplied by the Department, but forms were not available until April 1986. Respondents promptly returned them to the Department. Additionally, the respondents communicated with the Department within sixty days the failure of Agripen to make payment. Specifically, Ott, by letter of March 7, 1986, informed the Department of Agripen's failure to pay. In his letter of April 1, 1986, the Com-

missioner notified each respondent that Agripen's records reflected the debts. Any delay in submitting claims resulted from the Department's failure to supply the required forms.

Finally, the Commissioner contends the trial court misconstrued the terms "day of the loss" and "full market value" as they are used in the Guaranty Fund Act. Compensation under the Act is to be made for losses when grain is "delivered to a grain dealer." Although the term "day of the loss" is not specifically defined in the statute, language used indicates that the legislature intended delivery as a crucial element in determining the date of loss. Respondents made deliveries in January and February 1986 as evidenced by the record and their contracts. Despite this evidence, the Department determined the date of loss to be May 1, 1986. This is the date the Department verified respondents' claims, not the date respondents actually incurred losses.

The Guaranty Fund Act specifies that producers who suffer losses shall be paid "full market value." The trial court determined that "full" means "complete" or "whole" and "market price" means what a willing buyer would pay a willing seller in the ordinary course of trade. The trial court also found that the contracts at issue were the result of arms length negotiations between the respondents and Agripen and that the contracts reflect "what a willing buyer agreed to pay and a willing seller agreed to accept." There is evidence in the record to support the trial court's determination that the contract prices accurately reflect the "full market value" of respondents' losses at the time deliveries were made (date of the loss). Additionally, this interpretation is supported by the language of the Guaranty Fund Act.

We conclude that declaratory relief was appropriate under the law and the facts in this controversy, that respondents timely filed their claims and are entitled to full compensation as reflected by their contracts with Agripen. Accordingly, the trial court's decision is affirmed.

Affirmed.

GREGORY, C. J., and HARWELL, CHANDLER, and TOAL, JJ., concur.